THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action Number:

KAREN SCAVETTA,

       Plaintiff,

v.

KING SOOPERS, INC.;
THE KROGER CO.;
and DILLON COMPANIES, INC.
       Defendants.

---

## COMPLAINT AND JURY TRIAL DEMAND

---

Plaintiff Karen Scavetta, by and through undersigned counsel, files the following Complaint against Defendants King Soopers, Kroger Co., and Dillon Companies, Inc. (collectively "Defendants") and would show as follows:

### I. NATURE OF THE ACTION

This is an action under Title I of Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA") for employment discrimination, and §7(b) of the Age Discrimination Employment Act ("ADEA"), 29 U.S.C. §621, *et seq.* and state claims for wrongful termination in violation of public policy and outrageous conduct. Plaintiff seeks monetary damages, declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

Karen Scavetta ("Ms. Scavetta" or "Plaintiff") was subjected to an unlawful discharge based upon a recognized disability that was known to her employer. Ms. Scavetta suffers from rheumatoid arthritis. Due to medical orders arising from her disability, Ms. Scavetta is

1

prohibited from administering flu shots. Moreover, pursuant to state board regulations, Ms. Scavetta could not administer flu shots because her cardiopulmonary resuscitation certificate was not current. The Defendants ultimately terminated Ms. Scavetta's employment because she was unable to administer flu shots in violation of the Americans with Disabilities Act and the Age Discrimination Employment Act.

## II. JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. This action is authorized and instituted pursuant to 42 U.S.C. § 12117 of the Americans with Disabilities Act, as amended ("ADA"), and §7(b) of the Age Discrimination Employment Act ("ADEA"), 29 U.S.C. §621, et seq. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the Plaintiff's common law claims for wrongful termination in violation of public policy and outrageous conduct.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado.

## III. PARTIES

3. Plaintiff, Karen Scavetta, is a citizen of the United States of America, a resident of Denver, Colorado, and a former employee of Defendant King Soopers, which is owned and operated by Defendant The Kroger Co.

4. King Soopers, Inc. is a grocery store chain owned and operated by The Kroger Co. and Dillon Companies, Inc.

5. The Kroger Co. is an Ohio corporation with its principal place of business at 1014 Vine Street, Cincinnati, Ohio, 45202 that is registered to conduct business in Colorado.

2

6. Dillon Companies, Inc. is a Kansas corporation with its principal place of business at 2800 E. 4th Street, Hutchinson, Kansas 67501 that is registered to conduct business in Colorado.

7. The Defendants King Soopers, Inc., Kroger Co. and Dillon Companies, Inc are collectively referred to hereinafter as King Soopers or Defendants.

8. King Soopers is an "employer" within the meaning of 42 U.S.C. § 12111(5)(A) and 29 U.S.C. 630(b).

9. King Soopers is a "covered entity" within the meaning of 42 U.S.C. § 12111(2).

10. Plaintiff is a "qualified individual with a disability" within the meaning of 42 U.S.C. § 12111(8).

11. Plaintiff can perform the essential functions of her post as pharmacist at King Soopers with "reasonable accommodations" within the meaning of 42 U.S.C. § 12111(9).

## IV. STATEMENT OF CLAIMS

12. More than thirty (30) days prior to the institution of this lawsuit, Scavetta filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission alleging violations of the provisions of ADA and the ADEA by the Defendants. All conditions, precedent to the institution of this lawsuit, have been fulfilled.

13. On or about March 25, 2010, Ms. Scavetta filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission Denver District Office ("EEOC"), Charge Number 541-2010-01158, alleging unlawful termination and violations of the ADA, violations of the ADEA and retaliation occurring within three hundred days or less from the date of filing the Charge.

14. On or about September 30, 2010, Ms. Scavetta received a Notice of Right to Sue on Charge Number 541-2010-01158.

15. Since at least 2009, Defendants have engaged in unlawful employment practices, in violation of Title 1 of the ADA, as amended, 42 U.S.C. § 12101 *et seq.*, and Secton 4 of the ADEA, as amended, 29 U.S.C. §621, et seq. Such unlawful employment practices include unlawful discrimination in the discharge of Scavetta because of her disability in violation of the ADA and because of her age in violation of the ADEA.

## V. FACTUAL BACKGROUND

16. King Soopers is grocery store chain owned and operated by The Kroger Co.

17. The Kroger Co. is a grocery retail company founded in 1883 and incorporated in the State of Ohio in 1902. It is one of the largest grocery retailers in the United States, with 2009 sales of $76.7 billion. Its operations cover many states, with store formats including grocery and department stores, convenience stores and mall jewelry stores.

18. There are approximately fifty (50) King Soopers stores within the State of Colorado and at least eleven (11) stores in Denver.

19. Scavetta was employed by the King Soopers chain of The Kroger Co. for approximately thirty (30) years. She began working as a technician in 1985 and became a pharmacist in 1994 after graduating from the University of Colorado Pharmacy School. Ms. Scavetta has amassed a strong record providing outstanding service to the store's pharmacy patients. At the time of her termination, Ms. Scavetta was earning well over $110,000 in salary and benefits (including health benefits and pension) annually.

20. King Soopers had received Ms. Scavetta's medical records that were provided to the company and was well aware that Ms. Scavetta was disabled and has a long medical history of rheumatoid arthritis, a chronic disease, mainly characterized by inflammation of the lining, or

synovium, of the joints. It can lead to long-term joint damage, resulting in chronic pain, loss of function and disability.

21. Both federal cases and EEOC proposed regulations make it clear that rheumatoid arthritis constitutes a disability protected by the Americans with Disabilities Act. For instance, in *Moore v. J.B. Hunt Transport, Inc.*, 221 F.3d 944, 951 (7th Cir. 2000), the Seventh Circuit explained that "because rheumatoid arthritis is a physiological condition that affects the musculoskeletal system, it clearly qualifies as an impairment." *See also*, EEOC Proposed Regulations for the ADAAA (The EEOC's Notice of Proposed Rulemaking (NPRM) was published at 74 Fed. Reg. 48431-48450 (Sept. 23, 2009)).

22. Rheumatoid arthritis has severely restricted Ms. Scavetta's life activities. Ms. Scavetta can no longer golf, ride her bike, garden and play tennis. This medical condition has further substantially interfered with her ability to perform manual tasks, including for example, she has difficulty opening bottles, lifting pots and pans and grooming her hair. Ms. Scavetta further has trouble standing.

23. In December 2000, Dr. Vance Bray - a rheumatology specialist at the Denver Arthritis Clinic - diagnosed Ms. Scavetta with arthritis in her hands and as a consequence thereof, directed her to use an electric stapler, to assist with joint protection.

24. On September 25, 2008 and October 2, 2009, Dr. Bray prohibited Ms. Scavetta from administering flu shots due to her rheumatoid arthritis medical condition and the consequent limitations.

25. During the fall of 2009, prior to her termination, Ms. Scavetta consistently reminded King Soopers' management of the medical orders prohibiting her from rendering immunizations.

5

26. For instance, in September 2009, Ms. Scavetta addressed both her supervisors at King Soopers, Jeff Meador and Kelli George, that her medical condition prevented her from administering immunizations. In short, King Soopers was on ample verbal and written notice of her medical disability and rheumatoid arthritis condition prior to King Soopers' decision to terminate Ms. Scavetta's employment.

27. On October 4, 2009, Ms. Scavetta was confronted by King Soopers Store Manager Steve Anger and Assistant Manager Kris Eckhardt who both directed her to administer flu immunizations to waiting pharmacy patients. Ms. Scavetta politely informed both of them that due to her rheumatoid arthritic condition, she was prohibited by medical orders from administering the flu shots. She further explained that as a result of her medical condition and pursuant to state board regulations she could not administer the shots because her cardiopulmonary resuscitation ("CPR") certificate was not current.

28. Ms. Scavetta appropriately refused to administer flu shots. Colorado State Board of Pharmacy Rule 19.01.10(b)(2) provides that a pharmacist can only administer vaccines if they hold a current basic CPR certification issued by the American Heart Association or the American Red Cross, or a basic life support certification. Moreover, C.R.S. § 12-22-126(1)(k) renders it unlawful for an employer or an employer's agent or employee to coerce a pharmacist to dispense a prescription drug against the professional judgment of the pharmacist.

29. In direct violation of medical orders that were rendered by Ms. Scavetta's treating physicians, and in violation of state pharmacy regulations and laws cited above, Mr. Anger threatened Ms. Scavetta with termination unless she administered the flu shots. Despite this pressure, Ms. Scavetta refused to jeopardize her license and accede to these demands.

30. As a direct result thereof, two days later, on October 6, 2009, King Soopers fired Ms. Scavetta for insubordination highlighting her refusal to provide the requested immunizations.

31. Upon information and belief, Ms. Scavetta was terminated as a part of systematic plan to replace the company's older pharmacists with younger pharmacists. In addition to Ms. Scavetta, King Soopers also terminated Chuck Frost, Bruce Baker, Susan Jones and Guy Scavetta who were all over 40 years old, and had worked for the company for approximately 30 years or more. Upon information and belief, these individuals were replaced as part of a plan to replace older pharmacists with newly licensed pharmacists and/or much younger pharmacists.

32. This termination has had a devastating impact on Ms. Scavetta's career. Due to a declining economy and the fact that she cannot provide immunizations due to an existing medical condition, she has been unable to find any comparable position. As she was terminated when she was forty-eight (48) years old, Ms. Scavetta further stands to lose nearly twenty (20) years of salary, pension benefits and health benefit, totaling over two million dollars. Further, due to these humiliating circumstances, Ms. Scavetta has incurred severe emotional distress and anxiety.

33. Immunizations were also not an essential function of Ms. Scavetta's employment. King Soopers allowed many pharmacists to work who were unable to give immunizations. In particular, Pam Smith, Leah Berg and Carol Reed were licensed pharmacists that were exempted by King Soopers from giving immunizations due to medical conditions.

34. King Soopers also never had any policy that required pharmacists to render immunizations. It is noteworthy that King Soopers finally enacted a policy on immunizations on January 21, 2010, well after Ms. Scavetta's termination. King Soopers' own policy provides that it is not an essential function of the job as pharmacists could be exempted from giving immunizations.

7

35. In short, as King Soopers allowed other pharmacists from giving immunizations and as there was not even a policy in effect at the time of Ms. Scavetta's termination, it was not an essential function of a King Soopers' pharmacist to render immunizations.

36. On August 31, 2010, the Equal Employment Opportunity Commission ("EEOC") issued a final determination on the merits of Ms. Scavetta's Charge No. 541-2010-01158. The EEOC determined that King Soopers violated the ADA as King Soopers "failed to take part in the interactive process and provide an accommodation, resulting in the termination of [Ms. Scavetta's] employment."

## CLAIM I – DENIAL OF REASONABLE ACCOMODATION
### (Americans with Disabilities Act § 101(8), 42 U.S.C. § 12111(8))

37. All prior allegations are incorporated by reference.

38. Ms. Scavetta had a diagnosed medical disability known to her employer, for which she requested reasonable accommodations. Due to her rheumatoid arthritis medical condition, Ms. Scavetta was unable to administer flu shots.

39. The Defendants denied Ms. Scavetta's request for reasonable accommodation. Among other violations, although they had long known of her medical condition and the attendant limitations on account of her rheumatoid arthritis, Defendants still insisted that Ms. Scavetta administer flu shots.

40. The Defendants' denial of the Plaintiff's request was unreasonable and discriminatory. King Soopers was on ample verbal and written notice of Ms. Scavetta's medical record prior to their decision to terminate Ms. Scavetta's employment.

41. As a direct result of Defendants' discrimination against her on the basis of her disability, Plaintiff has suffered, and continues to suffer, emotional pain, suffering, inconvenience, mental anguish, anxiety, depression, loss of enjoyment of life, and other non-pecuniary losses.

42. Plaintiff also continues to incur pecuniary losses as a direct result of Defendants' discrimination.

43. By such acts described above, Defendants engaged in discrimination against Plaintiff with malice or reckless indifference to Plaintiff's rights under the Americans with Disabilities Act § 101(8), 42 U.S.C. § 12111(8).

## CLAIM II – VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT
## (29. U.S.C. Section 621, et seq.)

44. The preceding paragraphs hereof are incorporated by reference herein.

45. This claim is authorized and instituted pursuant to the provisions of the Age Discrimination in Employment Act, 29 U.S.C. Section 621, *et seq.* for relief based upon the unlawful employment practices of Defendants. Defendants' acts violated of the statute's prohibition against discrimination in employment based upon an employee's age.

46. As a consequence of Defendants' acts, omissions, and practices, Ms. Scavetta was unjustly and discriminatorily deprived of equal employment opportunities because of her age.

47. King Soopers engaged in age discrimination in violation of the Age Discrimination in Employment Act when it terminated the employment of Ms. Scavetta as she is over 40 years old, was performing her job satisfactorily.

48. The conduct of Defendants has been willful, reckless and in willful and wanton disregard of the rights and feelings of the Plaintiff and, therefore, Plaintiff is entitled to liquidated damages pursuant to the ADEA.

49. Plaintiff is further entitled to reasonable attorneys fees and costs as provided by ADEA.

50. Moreover, as a result of Defendants' above stated actions, Ms. Scavetta has suffered and will in the future continue to suffer, damages, losses, and injuries, including, but not limited to, income in the form of wages and prospective retirement benefits, and other benefits, promotion opportunities due to her as an employee, but denied because of her age, a diminution in her earning capacity, and other losses and injuries, all to her damage, and in an amount to be proven at trial.

## CLAIM III – RETALIATION FOR ENGAGING IN PROTECTED ACTIVITY
### (Americans with Disabilities Act § 101(8), 42 U.S.C. § 12111, et seq.)

51. All prior allegations are incorporated by reference.

52. Ms. Scavetta's termination was a direct result of her having claimed her legal right by requesting a reasonable accomodation for her medical disability and her refusal to accede to her employer's unreasonable orders. Just two (2) days after Ms. Scavetta refused to administer immunizations due to her rheumatoid arthritis medical condition, King Soopers terminated her employment.

53. As a result of such retaliation, Plaintiff has suffered, and continues to suffer, emotional pain, suffering, inconvenience, mental anguish, anxiety, depression, loss of enjoyment of life, and other non- pecuniary losses.

54. Plaintiff continues to incur pecuniary losses as a direct result of Defendant's retaliation.

## CLAIM IV – WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY
### (Colorado Common Law)

55. All prior allegations are incorporated by reference.

56. The Defendants unlawfully terminated Plaintiff's employment at King Soopers, in violation of public policy. Ms. Scavetta appropriately refused to administer flu shots because she did not have a current and valid CPR certification.

57. In direct violation of medical orders that were rendered by Ms. Scavetta's treating physicians, and in violation of state pharmacy regulations and laws cited above, Mr. Anger threatened Ms. Scavetta with termination unless she administered the flu shots. Despite this pressure, Ms. Scavetta refused to jeopardize her license and accede to these demands.

58. In particular, on October 6, 2009, King Soopers wrongly terminated Ms. Scavetta for insubordination, citing her refusal to provide the requested immunizations. This was later confirmed by the hearing officer's decision awarding Ms. Scavetta with unemployment benefits.

59. As a direct result of her unlawful termination by Defendants, Plaintiff has suffered, and continues to suffer, emotional pain, suffering, inconvenience, mental anguish, anxiety, depression, loss of enjoyment of life, and other non-pecuniary loses.

60. In addition to violating the Americans with Disabilities Act, King Soopers' actions grossly violated Colorado state law which squarely protect a private employee from wrongful discharge arising from a complaint about unsafe, dangerous and/or illegal conduct. *See for e.g., Flores v. American Pharmaceutical Services, Inc.*, 994 P.2d 455, 457 (Colo. Ct. App. 1999) (in *Flores*, the staff pharmacist advised a pharmacy technician that she would not commit an illegal act with her license connected to it).

61. Plaintiff also continues to incur pecuniary losses as a direct result of Defendants' conduct.

## CLAIM V – OUTRAGEOUS CONDUCT
### (Colorado Common Law)

62. All prior allegations are incorporated by reference.

63. Defendants engaged in extreme and outrageous conduct by (i) terminating Plaintiff owing to her refusal to administer flu shots on account of her disability; (ii) discriminating against Plaintiff on the basis of her age; and (iii) refusing to accommodate the medical requests and restrictions of Plaintiff that were caused by her medical condition.

64. Plaintiff has suffered, and continues to suffer, emotional pain, suffering, inconvenience, mental anguish, anxiety, depression, loss of enjoyment of life, and other non-pecuniary loses as a direct result of Defendants' extreme and outrageous conduct.

65. Plaintiff continues to incur pecuniary losses as a direct result of Defendants' conduct.

## PRAYER FOR RELIEF

Wherefore, the Plaintiff, Karen Scavetta, respectfully requests that this Court:

A. Declare the conduct of the Defendants to be a violation of rights guaranteed to Plaintiff pursuant to appropriate federal law.

B. Grant a permanent injunction enjoining Defendants, its officers, successors, assigns and all persons in active concert or participation with it, from engaging in any employment practice which discriminates on the basis of disability.

C. Order the Defendants to pay Ms. Scavetta back pay, front pay, compensatory damages, consequential damages, in amounts to be proved at trial, and all other affirmative and equitable relief necessary to eradicate the effects of Defendants' unlawful employment practices.

D.  Order Defendants to pay Ms. Scavetta punitive damages in the amount of two million dollars for its malicious and reckless conduct or in amount to be determined at trial.

E.  Award the Plaintiff's reasonable attorneys fee and expert witness fees.

F.  Award Plaintiff her costs in this action.

G.  Grant such further relief as the Court deems necessary and proper.

## JURY TRIAL DEMAND

The Plaintiff requests a jury trial on all matters raised in this Complaint.

Respectfully Submitted

/s/ Marc Schatten

MARC L. SCHATTEN, No. 37213
1120 Lincoln Street
Suite 1000
Denver, CO 80203
Tel: (303) 388-3200
Fax: (720) 306-2359
Email: mls@denverlawfirm.com
ATTORNEYS FOR THE PLAINTIFF
KAREN SCAVETTA

Dated this 9th day of December 2010.