**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 10-cv-02986-WJM-KLM

KAREN SCAVETTA,

      Plaintiff,

v.

KING SOOPERS, INC.,
THE KROGER CO., and
DILLON COMPANIES, INC.,

      Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff Karen Scavetta ("Plaintiff") brings claims for unlawful termination against her former employer, King Soopers Inc. *et al.* ("Defendants"). Before the Court is Defendants' Motion for Summary Judgment ("Motion"). (ECF No. 45.) Plaintiff has filed a Response to this Motion (ECF No. 58) and Defendants have filed a Reply. (ECF No. 60). The Motion is ripe for adjudication.

For the reasons set forth below, the Motion is granted in part and denied in part.

## I.  STANDARD OF REVIEW

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient

disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Service*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is genuine if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson*, 477 U.S. at 248.  The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Quaker State Mini-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995); *Houston v. Nat'l General Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II.  BACKGROUND

### A.    Factual Background

Plaintiff worked at King Soopers for over thirty years.  (ECF No. 58 at 3.)  She had worked as a pharmacist for King Soopers since 1994. *(Id.)*   Plaintiff was a "floater pharmacist" and worked in different stores to cover the shifts of other pharmacists. *(Id.)* Jeff Meador was Plaintiff's pharmacy supervisor  (ECF No. 58-6 at 1).

Plaintiff alleges that she suffers from rheumatoid arthritis.  (ECF No. 58 at 25.)  It causes pain, swelling and damage to the joints, impeding the movement and function of joints.  (*Id.*)  Because of this condition, she contends that she could not administer flu shots for her former employer, Defendant King Soopers.  (ECF No. 41 ¶¶ 26-28; ECF No. 58 at 25.)  Plaintiff claims that she had a medical certificate from her specialist directing her not to administer flu shots due to her medical condition. (ECF No. 58 at 25-26; ECF No. 58-6 at 1.)   This was communicated to Mr Meador and Ms Stephanie

2

Bouknight (Director of Labor Relations).  (ECF No. 58-6 at 1.)  Despite such notice,

Plaintiff contends that Defendants terminated her employment because of what she

contends is a disability, and also pursuant to a systematic plan to replace older

pharmacists with younger pharmacists.[1]  Plaintiff seeks damages for both economic and

non-economic losses, including an award of punitive damages and attorney's fees.

## B.    Procedural Background

Plaintiff filed this action against Defendants on December 9, 2010.  (ECF No. 1.)

An Amended Complaint was filed on January 5, 2012.  (ECF No. 41).  In the Amended

Complaint, Plaintiff claims are based upon the Americans with Disabilities Act ("ADA"),

the Age Discrimination in Employment Act ("ADEA"), and Colorado common law.

Defendants now move for summary judgment as to each of Plaintiff's claims.

## III.  ANALYSIS

Plaintiff specifically brings the following claims for relief: (1) Disparate Treatment

and Unlawful Termination under the ADA ("Claim1"); (2) Denial of Reasonable

Accommodation under the ADA ("Claim 2"); (3) Retaliation for Engaging in Protected

Activity under the ADA ("Claim 3"); (4) Age Discrimination under the ADEA ("Claim 4");

(5) Wrongful Termination in Violation of Public Policy ("Claim 5") and; (6) Outrageous

Conduct pursuant to Colorado Common Law ("Claim 6").

With respect to claims (1) through (4), the familiar *McDonnell-Douglas* burden-

shifting test applies.  *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see

also Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002).  Under

---

[1] Plaintiff was forty-eight years of age at the time she was terminated from employment.
(ECF No. 61 at 2.)

*McDonnell-Douglas*, Plaintiff must first establish a *prima facie* case of discrimination based on Plaintiff's disability or age. *Garrett*, 305 F.3d at 1216. If the plaintiff makes out a *prima facie* case, the burden shifts to the defendant to come forward with a legitimate, non-discriminatory basis for its employment decision. *Id.* If the defendant does so, the inference of discrimination drops out and the burden shifts back to the plaintiff and he must offer evidence to show that disability or age, *inter alia*, was a determinative factor in the employment decision, or that the defendant's non-discriminatory reason was pretextual. *Id.*

## A.   Disparate Treatment and Unlawful Termination (Claim 1 - ADA)[2]

To satisfy the *McDonnell-Douglas* analysis, Plaintiff must first establish a *prima facie* case of discrimination. To do so, three elements must be met: (1) the plaintiff is a disabled person as defined by the ADA; (2) the plaintiff is qualified, with or without reasonable accommodation, to perform the essential functions of the job held; and (3) the plaintiff suffered discrimination by an employer or prospective employer because of the disability. *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1274 (10th Cir.2005).

As to element (1), Plaintiff has proffered sufficient facts to establish that she had a disability within the meaning of the ADA. Pursuant to 42 U.S.C. 12102(1), the term disability means "a physical or mental impairment that substantially limits one or more

---

[2] Plaintiff argues that there is direct evidence to support her claim. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S. Ct. 1775, 104 L. Ed. 2d (1989) (holding that "the *McDonnell-Douglas* test is *inapplicable* where the plaintiff presents direct evidence of discrimination.") However, given that it is a close call whether there is sufficient 'direct evidence' in the record, the Court will undertake the analysis of Claim I under the *McDonnell-Douglas* framework. The Court notes that this does not preclude Plaintiff from making the same argument later should this matter proceed to trial.

4

major life activities."  Moreover, 29 C.F.R. § 1630.2(j)(1)(I) provides that the term

'substantially limits' shall be "construed broadly in favor of expansive coverage."

In Plaintiff's case, rheumatoid arthritis is a recognized impairment under the ADA.

It causes pain, swelling, stiffness, and damage to the joints.  It attacks the

muscular-skeletal system, impeding the movement and function of joints.  (ECF No. 58

at 25.)  There is also evidence in the record, that rheumatoid arthritis severely restricted

Plaintiff's life activities.  Plaintiff can no longer golf, ride her bike, garden and play

tennis.  (*Id.*) *See also* 29 C.F.R. § 1630.2(i)(2) ("rheumatoid arthritis affects

musculoskeletal functions.")  In addition to these facts, and relevant to Plaintiff's

termination on October 6, 2009, her medical specialist stated in a medical certificate

that Plaintiff must "not give flu or other injections" due to joint pain, swelling and

inflammation caused by her disability.  (ECF No. 58-6 at 4.)  On this record, Plaintiff is

disabled under the ADA for the purposes of summary judgment.

As to element (2), the Court similarly finds for Plaintiff because there is evidence

to show that she was qualified to perform essential functions required of her position.

Specifically, Plaintiff worked at King Soopers for over thirty years, and as a pharmacist

for nearly fifteen years.  (ECF No. 58 at 26.)  She obtained strong performance reviews.

This demonstrates that she could perform the essential functions of the pharmacist

position. (*Id.*)

To counter, Defendants assert that providing flu injection services was an

essential part of the job description. And because Plaintiff could not perform this

function, she was not qualified as a King Soopers' pharmacist.  Defendants rely heavily

on *Hennagir v. Utah Dept. of Corr.*, 587 F.3d 1255, 1262 (10th Cir. 2009).  There, the

Tenth Circuit explained that: "[p]rovided a job specification is job-related, *uniformly enforced*, and consistent with business necessity, the employer has a right to establish what a job is and what is required to perform it." (emphasis added.)  The Court finds Defendants' reliance on *Hennagir* misplaced.  The reasons are two-fold.

First, the *Hennagir* decision is qualified.  That case provides that an employer only has a right to establish what a job is, *if* the job specification is *uniformly enforced*. Defendants fail to appreciate the relevant triggers which give rise to the employer's right to determine essential functions of a position.  Here, it is hotly disputed whether the rendering of immunizations was an essential function of Plaintiff's job.  Indeed, at least ten  other similarly-situated pharmacists who had medical restrictions were exempted from giving immunizations. (ECF No. 58-15.) *See, e.g., Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 991 (9th Cir. 2007) (*en banc*).  Second, evidence exists that Defendants were aware of Plaintiff's disability for some time before her termination (*i.e.,* as far back as September 2008).  During this time, Defendants did not require Plaintiff to undertake patient immunizations.  This raises the issue: if immunizations were so essential to Plaintiff's job specification, why didn't Defendants enforce this requirement before October 2009?

In light of the above, the Court finds that genuine disputes as to material facts clearly exist and Defendants cannot prevail on its Motion with regard to element (2). *Anderson*, 477 U.S. at 248.

As to element (3) of the prima facie case—*i.e.,* whether Plaintiff was fired because of her disability—the Court views the record on this element in a similar fashion.  The Court has little difficulty in finding that the e-mail correspondence, in the

6

week leading up to Plaintiff's termination, broadly supports her position on her ADA disparate treatment claim.  In particular, there is an e-mail sent from Stephanie Bouknight (Director of Labor Relations) to Jeff Meador (Pharmacy Supervisor) dated September 28, 2009.  Ms Bouknight's e-mail states: "if she [Scavetta] really wants to *force* the [arthritis] issue it won't take long before we reach *termination.*"  (ECF No. 58-6 at 1.)  This e-mail, along with Plaintiff's submission of her medical certificate notifying Defendants of her disability on October 2, 2009, provide sufficient evidence that Defendants were aware of Plaintiff's disability. (*Id.* at 2-3.)  Given that Defendants were armed with knowledge of Plaintiff's disability, and that Plaintiff was fired on October 6, 2009, little more is required to show that this element of Scavetta's *prima facie* ADA disparate treatment claim is manifestly appropriate for jury determination, and cannot be resolved summarily on the papers.  Because all three elements of the *prima facie claim* are met, Plaintiff has satisfied her burden as to the first step in the *McDonnell-Douglas* analysis.

Turning to the second step, Defendants argue that termination of Plaintiff's employment was primarily for insubordination.  Because insubordination is a legitimate, nondiscriminatory reason for termination, the Court finds that Defendants have carried its burden in showing a nondiscriminatory reason for its decision to terminate Plaintiff.  *Texas Dep't. of Cmty Affairs v. Burdine*, 450 U.S. 248, 254 (1981);  *Rivera v. City & County of Denver*, 365 F.3d 912, 920 (10th Cir. 2004).

As to the third step,  to establish a genuine issue of material fact regarding pretext, a plaintiff must produce evidence that would allow a reasonable juror to find that the defendant's non-discriminatory reason is, among other things, "unworthy of belief."

7

*Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995).  A plaintiff can meet this

burden with "evidence of such weaknesses, implausibilities, inconsistencies,

incoherencies, or contradictions in the employer's proffered legitimate reasons for its

action that a reasonable factfinder could rationally find them unworthy of credence."

*Argo v. Blue Cross and Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1203 (10th Cir. 2006).

To make this determination, a court must consider the plaintiff's evidence in its totality.

*Orr v. City of Albuquerque*, 531 F.3d 1210, 1215 (10th Cir. 2008).

Here, there is evidence upon which a jury could find that Defendants terminated

Plaintiff because of her medical disability.  Much of this evidence overlaps with what has

been discussed above.  But again, the e-mail correspondence between Ms. Bouknight

and Mr. Meador (referencing Scavetta's termination before the date of termination) is

critical.  (ECF No. 58-6.)  Equally important is evidence dating back as far as September

2008 that gives rise to the fact that Defendants were aware of Plaintiff's disability as of

that date.  Given the timing of Ms Bouknight's referenced e-mail, and Plaintiff's

subsequent termination only a week later, there exist some circumstantial evidence of

pretext that can only be evaluated and resolved by a *jury. Randle*, 69 F.3d at 451.  As

such, Plaintiff has satisfied the third step of the *McDonnell-Douglas* analysis.

Accordingly, there is sufficient evidence in the record that make Plaintiff's ADA

disparate treatment claim trial worthy for jury determination.  *Harper v. Mancos Sch.*

*Dist. RE–6*, 837 F.Supp.2d 1211, 1223–24 (D.Colo. 2011).  The Court, therefore, denies

Defendants Motion for Summary Judgment with respect to Claim 1.

**B.     Denial of Reasonable Accommodation (Claim 2 - ADA)**

Plaintiff further argues that Defendants failed to accommodate her disability and that there is sufficient evidence in the record to deny summary judgment as to this claim as well.  In this regard, Plaintiff must first demonstrate that an accommodation appears reasonable on its face.  *White v. York Int'l Corp.*, 45 F.3d 357, 361 (10th Cir. 1995).  The burden of production then shifts to Defendant King Soopers to present evidence of its inability to accommodate.  *Id.*  If the Defendant presents such evidence, Plaintiff then has the burden of coming forward with evidence concerning her possible accommodations to rebut such evidence. *Id.*

Here, evidence in the record demonstrates that an accommodation of Plaintiff's disability is reasonable on its face.  The extent of that disability has been addressed at length above in Claim 1.  These facts provide ample predicate to show that Defendants could have taken some 'reasonable' steps to accommodate Plaintiff's disability.  This could have included allowing Plaintiff to decline giving immunizations, among other things.  Moreover, if Defendants knew during October 2009 that there was a heightened need for flu injections, it begs the question why Defendants did not have another (healthy)  pharmacist help Plaintiff on the day she was suspended.  Accordingly, the Court finds that steps to accommodate Plaintiff's disability were available to Defendants and were reasonable on their face. This allows Plaintiff to satisfy her initial burden.

Under *McDonnell-Douglas*, the burden then shifts to Defendants to present evidence of its inability to accommodate Plaintiff.  Defendants argue that they "simply did not have time to evaluate [Plaintiff's] medical information" so to accommodate her disability.  (ECF No. 45 at 27.)  This is a close call, but the Court concludes this is a

marginally sufficient rationale by Defendants to cause the burden to shift back to Plaintiff to come forward with evidence to rebut Defendants' position.

To that end, Plaintiff points to several facts in rebuttal.  First, Mr. Meador's e-mail to Ms. Bouknight on September 28, 2009 states that Plaintiff Scavetta had raised the issue of her disability with Meador on the same date.  (ECF No. 58-6.)  A medical certificate was submitted on Friday, October 2, 2009.  Viewing the facts most favorable to Plaintiff, there is also evidence that Defendants knew of the disability in September 2008.  Despite such awareness, there is nothing in the record to show that Defendants formally accommodated Plaintiff, or even that it attempted to do so.

Second, the meeting between Steve Anger (store manager) and Plaintiff on October 6, 2009 is telling against Defendants.  At that meeting, when Plaintiff attempted to explain her medical restrictions and the reasons why she was unable to give immunizations, Mr. Anger simply replied that he did not want to get into "semantics." (ECF No. 58-1 at 150; ECF No. 58-21.)  Mr. Anger then terminated Plaintiff's employment.  These facts could support inferences to be drawn by a jury that Defendants were not prepared to do anything to accommodate Plaintiff's disability.  Any argument that Defendants did not have enough time to accommodate Plaintiff—or even to take good faith steps to do so—is clearly rebutted by this evidence.

Accordingly, Plaintiff has provided evidence that would allow a reasonable juror to conclude that genuine issues of material facts exist with regard to whether Defendants failed to reasonably accommodate Plaintiff's disability.  Defendants' Motion for Summary Judgment is accordingly denied as to Claim 2.

**C.      Retaliation for Engaging in Protected Activity (Claim 3 - ADA)**

In order to establish a *prima facie* case of retaliation, a plaintiff must show: "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Proctor v. United Parcel Service*, 502 F.3d 1200, 1208 (10th Cir. 2007).  Here, Defendants correctly concede the first two elements of the *prima facie* case—*i.e,.* seeking an accommodation under the ADA is protected activity.  And termination is "materially adverse."  (ECF No. 45 at 29.)  Accordingly the Court need only consider whether a reasonable jury could find a causal connection between Plaintiff's protected activity under the ADA and her ultimate termination.

A jury may establish a causal connection between protected activity and an adverse employment action by inference.  Evidence of circumstances that justify an inference arise where protected activity is "closely followed by adverse action" which is *indicia of* a retaliatory motive. *Proctor*, 502 F.3d at 1208.  "The date of Plaintiff's termination is key to this inquiry because the closer it occurred to the protected activity, the more likely it will support a showing of causation." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir.1999) (stating that "a one and one-half month period between protected activity and adverse action may, by itself, establish causation.")

Here, Plaintiff had engaged in protected activity seeking an accommodation under the ADA—*i.e.*, Plaintiff provided a formal medical certificate to Defendants just four days before her termination.  This is much less than a month and a half involved in the *Anderson* case. The extremely close temporal proximity alone is sufficient to allow a

11

reasonable jury to infer the termination was in retaliation for her request for accommodation.

Despite this, Defendants argue that Plaintiff cannot prove causation because of her insubordination—*i.e.*, the purported failure to provide customers with flu shots was an intervening cause that defeats Plaintiff's claim.  To support its position, Defendants cite *Lovato v. Presbyterian Healthcare Servs.*, 2007 U.S. Dist. LEXIS 76650, at *25-26 (D.N.M. June 14, 2007).  Defendants state that this case goes to "pretext."  (ECF No. 45 at 29.)  On closer review, it is clear that its holding goes to a *prima facie* case; a step in the analysis well before Plaintiff must discharge her burden regarding pretext.[3]

Assuming, though, that Defendants rely on *Lovato* for the purposes of a *prima facie* case, the Court notes: (1) *Lovato* is not binding authority in this district, and (2) even if *Lovato* were followed, the existence of an intervening cause is a factual question determined on a case-by-case basis—particularly in the employment context where the causation analysis is tied to the knowledge and intent of the defendant.  As addressed above with respect to Claim 1, there are clear factual disputes regarding what

_____

[3] Defendants also cite *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1002-03 (10th Cir. 2011) (stating that  evidence of "temporal proximity has minimal value in a retaliation case where intervening events between the employee's protected conduct and the challenged employment action provide a legitimate basis for the employer's action").  But this case is cited in Defendants' Reply Brief, not its Opening Brief.  (ECF No. 60 at 14.)  The Court notes that "issues not raised in the opening brief are deemed abandoned or waived."  *Coleman v. B-G Maint. Mgmt. of Colo., Inc.*, 108 F.3d 1199, 1205 (10th Cir. 1997).  Even if the Court were to apply *Twigg*, Defendants cannot overcome the hurdle that causation in this case necessitates jury determination as to what Defendants knew at the time of the termination because Plaintiff's reason for the purported insubordination was tied closely to her disability (which Defendants had knowledge of)—*i.e.*, she was purportedly insubordinate in not providing the immunizations because of her medical disability. Thus, any argument based on intervening cause will require the jury to assess what was known by Defendants, and more importantly when it was known before suspension and subsequent terminations.  Given the conflicting facts as to these issues, the matter cannot be disposed of as a matter of law.

Defendants did know (and when).  These disputed facts preclude the grant of summary

with respect Claim 1.  Those same disputed facts are relevant to Claim 3.  Because

such facts are disputed, it follows that Plaintiff has satisfied her burden on the *prima*

*facie* case as to Claim 3 since Defendants cannot prevail as a matter of law.  *Anderson*,

477 U.S. at 248-49 (stating that a dispute as to a material fact depends on whether

there is sufficient disagreement between the parties factual narratives to require

submission to a jury).

As to the second and third steps of *McDonnell-Douglas*, each of the parties did

not meaningfully dispute these steps in the analysis.  Even if they were disputed, the

Court finds that these steps would follow a similar pattern to Claims 1 and 2,

above—particularly where there has been disputed material facts between the parties.[4]

Accordingly, Defendants' Motion for Summary Judgment regarding Claim 3 is also

denied.

## D.     Violation of the Age Discrimination in Employment Act (Claim 4 - ADEA)

The Court finds that summary judgment is warranted as to Plaintiff's Age

Discrimination Claim.  To make out a *prima facie* case, Plaintiff must prove (1) she is a

member of the class protected by the ADEA; (2) she was doing satisfactory work; (3)

she was discharged; and (4) her position was not filled or was filled by a younger

person. *Rivera*, 365 F.3d at 920-21.

Here, and while Plaintiff could meet elements (1)-(3), she fails on element (4).

Plaintiff identifies several pharmacists whom she also believes were terminated

---

[4] "[W]e are not charged with making the parties' arguments for them.*" Meyer v. Bd. of
County Comm'rs*, 482 F.3d 1232, 1242 (10th Cir. 2007).  This passage would apply ever more
so to Defendants being the moving party in this case.

because of age, but she has no personal knowledge of the circumstances surrounding their departures.  (ECF No. 45-2 Ex. B at 165-168.)  Nor is anything specific as to when the  other employees (who were reportedly aged 40 or older) were terminated from the employ of King Soopers, what store they were discharged from, whether they reported to one or more of the same supervisors, among other things.  Clearly, more is needed to discharge her burden as to the *prima facie* case.  *See Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1199 (10th Cir. 2000) (holding that the responding party must ensure that the factual dispute is portrayed with "particularity").  Perhaps most fatal to this claim is the lack of *any* evidence in regards to how pharmacists under the age of 40 were treated in similar circumstances.

In sum, Plaintiff's ADEA Claim is quite distinct from the claims for unlawful termination based on disability.  The Court finds that much of Plaintiff's factual and legal arguments are conclusory and without much or indeed any evidentiary support in the record. Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's age discrimination claim is granted.  *See Mitchell*, 218 F.3d at 1199.

**E.    Wrongful Termination in Violation of Public Policy (Claim 5 - Colorado Common Law**)

Plaintiff's next claim asserts the common law tort of wrongful termination.  While Plaintiff need not prove her claim at this juncture, the following elements for a wrongful discharge claim are pertinent because they provide the framework for the summary judgment analysis.[5]

---

[5] Plaintiff need only set forth specific facts that would be admissible in evidence in the event of trial from which a"rational trier of fact could find for the nonmovant."  *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001).

14

Relevantly, the elements for a wrongful discharge claim, are: (1) the employer directed the employee to perform an illegal act as part of the employee's work related duties; (2) the action directed by the employer would violate a specific statute relating to the public health, safety, or welfare, or would undermine a clearly expressed public policy; (3) the employee was terminated as the result of refusing to perform the act directed by the employer; and (4) the employer was aware, or reasonably should have been aware, that the employee's refusal to comply with the employer's order or directive was based on the employee's reasonable belief that the action ordered by the employer was illegal, contrary to clearly expressed statutory policy relating to the employee's duty as a citizen, or violative of the employee's legal right or privilege as a worker. *Bonidy v. VVCAD*, 186 P. 3d 80, (Colo. Ct. App. 2008).

Here, the Court finds that Plaintiff has provided enough admissible facts—beyond mere conclusory assertions—to support the relevant elements of the claim. Much of Plaintiff's argument is based upon the fact that the State Pharmacy Board passed Colorado Regulation 19.01.10(b)(2) (3 CCR 719-1).  That regulation provides that a pharmacist can only give immunizations if the "pharmacist or pharmacy intern holds a current basic cardiopulmonary resuscitation (CPR) certification issued by the American Heart Association or the American Red Cross or a basic cardiac life support certification."  Pharmacists that are licensed in Colorado must follow state statutes. *See Colorado Pharmacy Regulation* 1.00.11 ("A pharmacist shall at all times conduct his/her profession in conformity with all federal and state drug laws, rules and regulations; and shall uphold the legal standards of the current official compendia")

The record indicates that Plaintiff was a licensed pharmacist and had not

15

renewed her CPR certificate.  (ECF No. 56 at 35-36.)  On October 2, 2009, Defendants

directed Plaintiff to render immunizations even though they were fully aware that she did

not have a current CPR card.  Because regulation 1.00.11 is binding on Plaintiff, there is

evidence in the record that Defendants' directive violated Colorado state pharmacy laws

and regulations which mandate that a pharmacist have a current CPR card in order to

give immunizations.  Such facts provide more than enough to satisfy elements (1)-(4)

for the purposes of summary judgment.

Accordingly, the Court finds that Plaintiff has shown a trial-worthy issue

as to Claim 5 regarding violation of public policy and Defendants' Motion for Summary

Judgment is denied as to this claim.[6]

**F.    Outrageous Conduct Claim (Claim 6 - Colorado Common Law).**

The Court finds that summary judgment with respect to the Outrageous Conduct

Claim is warranted as a matter of law. The elements of an outrageous conduct claim

are: "(1) the defendant engaged in extreme and outrageous conduct, (2) recklessly or

with the intent of causing the plaintiff severe emotional distress, and (3) causing the

plaintiff severe emotional distress." *Green v. QWest Services Corp.*, 155 P.3d 383, 385

(Colo. App. 2006).  Liability for outrageous conduct lies only when the plaintiff can prove

conduct "so outrageous in character, and so extreme in degree, as to go beyond all

possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in

a civilized community."  *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999).

Here, Plaintiff alleges that Ms Bouknight's e-mail to Mr. Meador—that Plaintiff

---

[6] While Defendants do not raise the argument at summary judgment stage, the Court notes that Plaintiff's Colorado common law claims are not precluded by the federal statutes referenced in Claims 1-3.  *Brooke v. Restaurant Services, Inc.*, 906 P.2d 66, 68 (Colo.1995).

would be terminated if she "forced" the issue of her medical restrictions—provides the predicate for Plaintiff's Outrageous Conduct claim.  While there is much merit in such evidence as applied to Claim 1, this e-mail and the following events alone do not rise to the level that is required to satisfy the relevant elements in Claim 6.  The relevant case law has erected a very high bar for plaintiffs to clear in order to get such a claim before a jury.  While Defendants' conduct–if found by the jury in conformity with the allegations asserted by Plaintiff in this action–may be actionable employment discrimination, it does rise to the level which permits a jury to find that it is "utterly intolerable in a civilized community."  *Coors Brewing Co.* 978 P.2d at 666.  The case law is also clear in that an outrageous conduct claim under Colorado law requires ascertainable misconduct, and is not cognizable if the allegations, forming the basis of the claim, are the same as those forming the basis of a discrimination claim.  *Visor v. Spring/United Mgmt. Co.*, 965 F. Supp. 31, 33 (D. Colo. 1997).  That is precisely what has occurred here.

For these reasons, element (1) of this claim is not met, and the Court finds that it can be disposed of as a matter of law in the context of a Rule 56 motion.  As to this claim, therefore, Defendants' Motion for Summary Judgment is granted.

## IV. CONCLUSION

For the reasons set forth above, It is hereby ORDERED that:

1.  Defendants' Motion for Summary Judgment (ECF No. 45) is GRANTED in part and DENIED in part;

2.  Defendants' Motion for Summary Judgment as to Plaintiff's claim for Disparate Treatment and Unlawful Termination under the ADA ("Claim 1") is DENIED;

3.      Defendants' Motion for Summary Judgement as to Plaintiff's claim for Reasonable Accommodation under the ADA ("Claim 2") is DENIED;

4.      Defendants' Motion for Summary Judgement as to Plaintiff's claim for the Retaliation for under the ADA ("Claim 3") is DENIED;

5.      Defendants' Motion for Summary Judgement as to Plaintiff's claim for Age Discrimination under  the ADEA ("Claim 4") is GRANTED;

6.       Defendants' Motion for Summary Judgement as to Plaintiff's claim for Wrongful Termination in Violation of Public Policy ("Claim 5") is DENIED;

7.       Defendants' Motion for Summary Judgement as to Plaintiff's claim for Outrageous Conduct pursuant to Colorado Common Law ("Claim 6") is GRANTED.

Dated this 28th day of January, 2013.

BY THE COURT:

_____

William J. Martínez
United States District Judge

18